```
                UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF VERMONT

Richard J. Regimbald,          :
      Plaintiff,               :
                               :
    v.                         :    File No. 2:05-CV-161
                               :
General Electric Company,      :
      Defendant.               :
```

OPINION AND ORDER
(Papers 45 and 57)

Plaintiff Richard Regimbald, proceeding *pro se*, brings this action alleging that defendant General Electric ("GE") fired him in retaliation for reporting misconduct by fellow GE employees.  GE now moves for summary judgment claiming that it fired Regimbald, who had been employed at GE for 26 years, after receiving reports that he had made threatening and sexually inappropriate comments.  For the reasons set forth below, GE's motion for summary judgment is GRANTED.

Factual Background

From 1978 to 2004, Regimbald was employed by GE at an aircraft engine component manufacturing facility in North Clarendon, Vermont.  In April, 2004, Regimbald accused other GE employees of "mischarging," meaning that the employees were "falsely reporting employee work time, which in turn results in a false pay voucher."  (Paper 54

at 3).  Regimbald claims that when questioned about the possibility of mischarging, the employees in his work area responded by falsely accusing him of having made threatening and sexually inappropriate remarks.

GE investigated both the mischarging claim and the reports of Regimbald's intimidating and sexually inappropriate comments.  In the course of the investigation, GE personnel interviewed 13 of Regimbald's co-workers.  In addition to specific reports of threatening and/or inappropriate remarks, the investigation found that none of the employees had concerns about the mischarging issue.[1]

On May 20, 2004, after investigators had completed the first 10 interviews, GE placed Regimbald on paid suspension.  On May 28, 2004, investigator Glen Traverse, a representative from GE's Human Resources Department, met with Regimbald and discussed the results of the

---

[1] Regimbald objects to GE's use of the investigation results at summary judgment, arguing that the statements made to investigators constitute hearsay.  The investigation results are being submitted for the purpose of showing the thought processes of GE supervisors, and not for the truth of the alleged statements by Regimbald's co-workers.  The reports are, therefore, admissible and may be considered.  See Fed. R. Evid. 801(c); Cameron v. Community Aid for Retarded Children, 335 F.3d 60, 65 n.2 (2d Cir. 2003).

2

investigation.  Regimbald was subsequently informed of his firing via telephone and in a letter dated June 1, 2004.  The letter stated the reasons for the termination as "violation of company policy, including intimidating behavior toward your co-workers, threatening comments, and sexually inappropriate comments."

## Procedural History

Regimbald's initial complaint appeared to allege a claim of discrimination, and included a right to sue letter from the Equal Employment Opportunity Commission ("EEOC").  The right to sue letter was issued after the EEOC investigated Regimbald's claims of gender and disability-based discrimination and concluded that "it is unlikely the EEOC would find a violation if it invested additional resources."

Regimbald subsequently filed an amended complaint in which he described himself as a "whistleblower."  (Paper 40 at 1).  "Following my verbal complaint to my supervisor Sean Alvarese [sic], an investigation by General Electric of Plaintiff Richard J. Regimbald led to a retaliatory discharge of plaintiff."  Id. at 2 (emphasis in original).  The amended complaint also set

forth the cause and nature of Regimbald's disability, and suggested that he was assigned certain jobs in violation of the Americans with Disabilities Act.  Ultimately, however, Regimbald explained that "I reported mischarging and was fired!  This is not a complicated case, but is very detrimental to my health and welfare."  Id. at 4.

GE now moves for summary judgment, arguing that Regimbald has failed to support a claim of either discrimination under the ADA or of retaliatory discharge. In opposition to GE's motion, Regimbald clarifies that he is not bringing a discrimination claim, and that his only claim is for retaliation.

> "Plaintiff has raised only two questions for this court to decide: Did Defendant General Electric terminate Plaintiff's employment at General Electric in retaliation for Plaintiff reporting mischarging, . . . ?  If so, did General Electric's action have an adverse effect because of any such retaliatory termination of his job at General Electric?"

(Paper 54 at 3).  In light of this clarification, the Court will consider only Regimbald's claim that he was fired in retaliation for his report of mischarging.

## Discussion

I.  Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the

4

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002)( quoting Anderson, 477 U.S. at 248).

On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party.  See, e.g., Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003)(citing Anderson, 477 U.S. at 255).  However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "Conclusory allegations, conjecture, and

speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  In addition, "the 'mere existence of a scintilla of evidence' supporting the non-movant's case is . . . insufficient to defeat summary judgment."  Niagara Mohawk Power Corp. v. Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Anderson, 477 U.S. at 252).  While the submissions of *pro se* litigants are liberally construed, see, e.g., Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), the fact that Regimbald is "proceeding *pro se* does not otherwise relieve [him] from the usual requirements of summary judgment."  Fitzpatrick v. New York Cornell Hosp., 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003); accord Feurtado v. City of New York, 337 F. Supp. 2d 593, 596 (S.D.N.Y. 2004) (citing cases).

II.  Retaliatory Discharge Claim

In order to establish a *prima facie* case of unlawful retaliation, Regimbald must show "(1) participation in a protected activity known to the defendant, (2) an employment action disadvantaging [the plaintiff], and (3) a causal connection between the protected activity and

the adverse employment action." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); see also Robertson v. Mylan Laboratories, Inc., 176 Vt. 356, 376 (2004).[2]  If Regimbald succeeds in establishing a *prima facie* case, the burden shifts to GE to articulate "a legitimate, non-retaliatory reason for the complained of action." Quinn, 159 F.3d at 768; Robertson, 176 Vt. at 376-77.  If GE meets this burden, Regimbald must respond with "evidence 'sufficient to raise a fact issue as to whether [GE]'s reason was merely pretext' for retaliation." Quinn, 159 F.3d at 768-69 (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995)).

    A.   Protected Activity

---

[2] Regimbald has not cited any federal law in support of his retaliation claim.  He does, however, allege that GE was a federal contractor.  GE has addressed Regimbald's claims on primarily state law grounds.  Construing Regimbald's *pro se* claim liberally, he might also have a cause of action under the federal False Claims Act.  See 31 U.S.C. §§ 3729, 3730(h).  In any event, the standard under the FCA is consistent with the standard applied in retaliation claims generally, since under § 3730(h) a plaintiff must prove (1) that he engaged in conduct protected under the statute, (2) that defendants were aware of his conduct, and (3) that he was terminated in retaliation for his conduct.  See Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994); Mikes v. Strauss, 889 F. Supp. 746, 752 (S.D.N.Y. 1995).  Therefore, the Court will not conduct a separate analysis under the FCA.

Regimbald claims that he was fired because he reported mischarging.  GE argues that, even if it had fired Regimbald for this reason, his mischarging allegation was not legally protected for purposes of a retaliation claim.  Specifically, GE contends that in order to be afforded legal protection, Regimbald's conduct needed to implicate a public policy concern.

It is undisputed that Regimbald was an at-will employee at GE.  Under Vermont law, an employer may terminate an at-will employee "unless there is a clear and compelling public policy against the reason advanced for the discharge."  Jones v. Keogh, 137 Vt. 562, 564 (1979); see also LoPresti v. Rutland Regional Health Servs., Inc., 177 Vt. 316, 325 (2004); Marcoux-Norton v. Kmart Corp., 907 F. Supp. 766, 771 (D. Vt. 1993).  For purposes of this exception to the at-will employment doctrine, the definition of a clear and compelling public policy is broad and need not be legislatively defined.  Payne v. Rozendaal, 147 Vt. 488, 493 (1986).  Courts generally find a public policy violation when "the termination is so contrary to society's concern for providing equity and justice that there is a clear and

8

compelling public policy against it." Dulude v. Fletcher Allen Health Care, Inc., 174 Vt. 74, 82 (2002).  Public policy concerns are not implicated where employees "exercised merely private rights." Marcoux-Norton, 907 F. Supp. at 771.

There is precedent in this Court for treating whistleblowing generally as a protected activity under the common law.  See Marcoux-Norton, 907 F. Supp. at 771 (citing Burt v. Standard Register Co., No. 90-295, slip op. at 5 (D. Vt. June 19, 1992 (Coffrin, J.) (collecting cases)).  Moreover, Regimbald notes that GE is a government contractor, thereby implying that mischarging for employee work time constituted a fraud upon the federal government.  While, in most cases, improprieties in a private company's billing practices are unlikely to rise to the level of a compelling public policy concern, the fact that the fraud is being committed on the government raises the level of public concern.  Cf. United States ex. rel. Fullington v. Parkway Hosp., Inc., 351 B.R. 280, 288-89 (E.D.N.Y. 2006) (Federal Claims Act serves public policy interest of deterring fraud upon government).  Because Regimbald claims that he was

reporting conduct that may have been intended to commit a fraud upon the federal government, and viewing that claim in a light most favorable to the non-moving party, the Court finds that Regimbald's conduct was protected activity for the purpose of his retaliatory discharge claim.

    B.   Reasons for Regimbald's Termination

It is clear that, under the second prong of the unlawful retaliation test, an adverse employment action directly disadvantaged the plaintiff. The Court therefore turns to the third prong, which requires a causal connection between Regimbald's whistleblowing activity and his termination. Quinn, 159 F.3d at 769.

Regimbald claims that after he reported the mischarging, other employees fabricated stories about him. In his deposition, Regimbald suggested that management was behind this conspiracy, and that people were threatened with firing if they did not make up stories about him. (Paper 46-5, Regimbald Dep. at 180). When asked about details of the conspiracy, however, Regimbald conceded that his theory was merely something he had pieced together based upon his view of the facts,

and that he had not, in fact, been informed by other employees of a management-led effort to fire him.  Id.

In the absence of direct evidence to prove a management conspiracy, Regimbald submits that the proximity in time between his reporting activity and his firing weighs in favor of finding "a direct causal connection, or nexus."  (Paper 55-1, Regimbald Aff. at 15).  In evaluating whether a causal connection exists between the adverse action and the protected activity, courts often consider their proximity in time.  See, e.g., Cunningham v. Consolidated Edison, Inc., 2006 WL 842914, at * 19 (E.D.N.Y. March 28, 2006) (citing Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001); Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir. 1986)).  Indeed, an employee who undertakes a protected activity that is followed closely in time by an adverse employment action may use the temporal connection as evidence of retaliation.  See Manoharan v. Columbia Univ., 842 F.2d 590, 593 (2d Cir. 1988).

The timing issue is clouded, however, by other events around the same time period.  Those events

11

included complaints of inappropriate conduct prior to Regimbald's mischarging allegation, and the results of the subsequent GE investigation.  Regimbald's supervisor, Sean Alvarez, has submitted an affidavit in which he states that in the weeks prior to Regimbald's allegation, he had received "indirect allegations regarding possible inappropriate comments that Regimbald may have made toward his co-workers."  (Paper 50, Alvarez Aff. at 1).  Alvarez met with Regimbald and "reminded him that he was on 'Oral Reminder' level of discipline," and that if specific complaints were received, Regimbald would be subjected to a higher level of discipline.[3]  Alvarez also spoke with other GE workers about Regimbald's conduct, but was unable to obtain details because the workers were reportedly afraid that Regimbald would retaliate "against them and their families."  Id. at 3.

The record at summary judgment indicates that Regimbald's mischarging allegation occurred on April 23, 2004.  On that date, Regimbald and a female co-worker began shouting at each other from their work stations.

---

[3] Regimbald explains in his affidavit that this "Oral Reminder" was for posting a statement pertaining to the rights of Vietnam veterans on a company bulletin board.  (Paper 55-1, Regimbald Aff. at 7).

Alvarez ordered them to stop yelling and directed them both to follow him downstairs.  On their way down, Regimbald and the co-worker continued their heated exchange, and Regimbald accused the co-worker of "misvouchering and breaking the rules."  Id. at 2.[4]

After speaking with Regimbald and the co-worker about the incident, Alvarez met with other managers at the GE facility.  As a result of a meeting on May 17, 2004, the managers decided to conduct an investigation into both Regimbald's conduct and his misvouchering claim.  As discussed above, that investigation revealed numerous reports of sexually inappropriate and/or threatening comments by Regimbald in the workplace.  (Paper 46-15, Traverse Aff. at 2-5).  The investigation also found that other workers were not concerned about the issue of mischarging.  Id. at 5.  After the initial interviews were conducted, Regimbald was suspended with pay.  Once the investigation was completed, he was terminated.  Id. at 7.

In order to establish a *prima facie* claim of

---

[4] Regimbald alleges that he reported mischarging by another employee as well, but has not provided the date upon which he made that report.  (Paper 55-1, Regimbald Aff. at 12).

13

retaliation, the plaintiff's burden is *de minimis*. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Although there is evidence to the contrary, the temporal proximity between Regimbald's reporting acivity and his firing arguably suggests a causal connection between the two events. Accordingly, for the sole purpose of determining whether Regimbald has made the showing required for a *prima facie* case, the Court concludes that the plaintiff has met his minimal burden. See Simon v. New York Bd. of Educ., 2006 WL 1210959, at *11 (E.D.N.Y. May 2, 2006).

A *prima facie* case having been established, the burden shifts to GE to show a legitimate, non-retaliatory reason for the firing. Quinn, 159 F.3d at 768; Robertson, 176 Vt. at 376-77. GE has satisfied its burden on this front. It has submitted affidavits from two supervisors who received multiple and consistent accounts of Regimbald acting in violation of GE policy. The reports began with statements by one of the employees whom Regimbald had accused of mischarging. In a meeting with Alvarez, this employee accused Regimbald of using vulgar language and of openly expressing his hatred of

14

women in the workplace.  Having already spoken to Regimbald about inappropriate comments, Alvarez warned him that any further incidents would result in severe action.

Prior to his meeting with other supervisors on May 17, 2004, Alvarez received more reports that Regimbald had made inappropriate and violent comments, including a statement that "everyone up there should have their throats slit and left to bleed."  (Paper 50, Alvarez Aff. at 4).  When GE personnel conducted their investigation, several employees confirmed that Regimbald had been making inappropriate and threatening statements.  Of the first 10 employees interviewed, three had heard an inappropriate comment to a female employee, three reported hearing Regimbald make threatening comments about employees, and five reported feeling unsafe or uncomfortable in the workplace because of Regimbald's presence.  (Paper 46-15, Traverse Aff. at 12).  Subsequent interviews rendered similar results.[5]

---

[5]  These last interviews included reports of threats of physical harm.  For example, one employee reported hearing Regimbald say that if something happened to him, he would "have no problem coming in with a weapon and looking for certain people first."  (Paper 46-15, Traverse Aff. at 6).  Another employee reported that Regimbald was prone to sudden

GE company policy provides that an employee may be terminated for "vile, abusive or threatening language." (Paper 46-8 at 1).  GE's investigation revealed conduct consistent with this ground for termination.  Even Regimbald admits to having made at least some inappropriate statements, although he insists that they were only in response to barbs from co-workers.  (Paper 46-5, Regimbald Dep. at 173-74).  While Regimbald denies having made the most egregious statements, and contends that he never threatened anyone, GE's investigation found otherwise.[6]  Given the evidence in support of GE's position, the Court finds that GE has established a legitimate, non-retaliatory reason for Regimbald's termination.

Because GE has made the required showing, the burden shifts back to Regimbald to show evidence of a pretext. It is here that Regimbald's claims ultimately fail. To rebut a legitimate, non-discriminatory basis of

---

outbursts, and would say on occasion "I just want to shoot somebody."  Id. at 7.

[6]  At his deposition, Regimbald refused to admit or deny certain sexually inappropriate statements.  GE contends that refusing to answer a question does not create a genuine issue of material fact.

16

dismissal, a plaintiff is "obliged to produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation] was the real reason for the discharge.'"  Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994)).  Regimbald's evidence does not meet this standard.

Regimbald claims that employees at GE conspired against him and fabricated stories in order to get him fired.  He has offered no direct evidence, however, of such a conspiracy.  As discussed above, the timing of his firing was close enough to his reporting activity that a reasonable factfinder could, in the absence of other evidence, link the two events.  Here, there is clear and substantial evidence showing that the two events were not, in fact, connected, and that Regimbald was fired for his own misconduct.

The fact that Regimbald contests the truthfulness of statements made to GE's investigators does not create a

17

genuine issue of material fact for trial. "[W]here, as here, the nonretaliatory justification is supported by an employer's conclusions following an investigation, a plaintiff cannot escape summary judgment by simply attacking the legitimacy of the employer's findings." Avillan v. Potter, 2006 WL 3103309, at *20 (S.D.N.Y. Nov. 1, 2006).  Ultimately, in a case such as this, the relevant inquiry is not whether all of the facts underlying the employer's decision were accurate. Instead, the question is whether, based upon the available information, the employer fired the plaintiff for legitimate, non-retaliatory reasons.  Cf. McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006) (courts "are decidedly not interested in the truth of the allegations against plaintiff.  [They] are interested in what '*motivated* the employer'; the factual validity of the underlying imputation against the employee is not at issue.") (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983) (emphasis in McPherson)).

In this case, Regimbald has succeeded in setting forth a *prima facie* case, and contends that his firing

was based upon false statement by fellow GE employees. He also contends that his supervisors fired him for reporting mischarging, but offers only speculation in support of this claim. GE has presented sufficient evidence to support its contention that Regimbald was fired for non-retaliatory reasons, and Regimbald has failed to rebut this evidence with his own showing of pretext. Therefore, based upon the evidence presented by the parties, and drawing all reasonable inferences in Regimbald's favor, the Court concludes that no reasonable juror could find that GE's stated grounds for termination were a pretext for retaliation. See, e.g., Holt v. KMI-Continental, Inc., 95 F.3d 123, 130-31 (2d Cir. 1996) (affirming summary judgment where plaintiff's only showing of pretext was temporal proximity and the defendant asserted that it fired plaintiff for documented poor performance). GE's motion for summary judgment is, therefore, GRANTED.

## Conclusion

For the reasons set forth above, GE's motion for summary judgment (Paper 45) is GRANTED. GE's motion to strike Regimbald's affidavit (Paper 57) is DENIED, and

this case is DISMISSED.

Dated at Burlington, in the District of Vermont, this 12th day of January, 2007.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge, U.S. District Court